1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    DISTRICT COUNCIL 16 NORTHERN            Case No.  23-cv-00458-TSH
     CALIFORNIA HEALTH AND WELFARE
8    TRUST FUND, et al.,

9                  Plaintiffs,              **ORDER GRANTING MOTION FOR
                                            DEFAULT JUDGMENT**
10         v.
                                            Re: Dkt. No. 67
11   HERRON PAINTING CO., et al.,

12                 Defendants.

13

14                             **I.    INTRODUCTION**

15         Plaintiffs District Council 16 Northern California Health and Welfare Trust Fund, et al.

16   bring this case against Defendants Kevin Herron, Dora Herron, Herron Painting Co., a California

17   Partnership; and Herron Painting, Inc., alleging Defendants failed to report and pay required

18   contributions under the parties' bargaining and trust agreements.  Plaintiffs allege that Defendants

19   Herron Painting Co. (a California partnership), Herron Painting, Inc. (a California corporation),

20   and Kevin Herron individually and doing business as Herron Painting Co. (a sole proprietorship)

21   were or are operating as a single employer and/or are continuations, successors, or alter egos of

22   one another.

23         Pending before the Court is Plaintiffs' Motion for Default Judgment, in which Plaintiffs

24   request the Court enter default judgment against Defendants Herron Painting Co. and Herron

25   Painting, Inc. (collectively "Entity Defendants").  ECF No 67.[1]  Entity Defendants have not

26

27   _____

28   [1]  Plaintiffs have separately filed a motion for summary judgment against Defendants Kevin
     Herron and Dora Herron (collectively "Individual Defendants").  ECF No. 72.  The Court
     considers Plaintiffs' motion for summary judgment in a separate order to be filed concurrently.

United States District Court
Northern District of California

opposed the motion.  The Court finds this matter suitable for disposition without oral argument.

Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS** the motion.[2]

## II.    BACKGROUND

### A.    The Parties

Plaintiffs are employee benefit plans as defined in the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(3), 29 U.S.C. § 1002(3), and their respective trustees (collectively "Trust Funds" or "Plaintiffs").  Am. Compl. ¶ 1, ECF No. 9.  The Joint Board of Trustees ("Trustees") of said Funds are the named fiduciaries of the Funds under ERISA § 302(a), 29 U.S.C. § 1002(a).  *Id.*  The Trust Funds are administered in this district and their principal place of business is in Alameda County, California.  *Id.* ¶ 8.

### B.    Collective Bargaining and Trust Agreements

On or about May 24, 2012, Defendant Kevin Herron, on behalf of "Herron Painting," entered into the Northern California Floor Painters Master Agreement between the Union and the Northern California Painting and Finishing Contractors Association.  *Id.* ¶ 11.  On or about January 30, 2015, Defendant Kevin Herron, on behalf of "Herron Painting," entered into the Northern California Floor Painters Master Agreement between the Union and the Northern California Painting and Finishing Contractors Association.  *Id.*  On or about October 9, 2017, Defendant Kevin Herron, on behalf of "Herron Painting," entered into the Northern California Floor Painters Master Agreement between the Union and the Northern California Painting and Finishing Contractors Association (collectively, the "Bargaining Agreements").  *Id.*  Plaintiffs are third party beneficiaries of the Bargaining Agreements.  *Id.*

The Bargaining Agreements require employer contributions to Plaintiffs' ERISA funds, to the Union for union dues, and to other plans described in the Bargaining Agreement.  *Id.* ¶ 11.  Under the terms of the Bargaining Agreements, Plaintiffs' trustees are authorized to collect and distribute the contributions due under the Bargaining Agreements.  *Id.* ¶ 13.  The Bargaining Agreements incorporate the terms of the governing documents of ERISA Plaintiffs (the "Trust

---

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 8, 17.

United States District Court
Northern District of California

Agreements"). *Id.* ¶ 14. These agreements require Defendants to regularly pay certain sums of money to Plaintiffs, the amounts of which are determined by the hours worked by Defendants' employees. *Id.* Under the terms of these agreements, contributions are due on the fifteenth day of the month following the month hours were worked, and are considered delinquent if not received by the last day of that month. *Id.*

The Bargaining and Trust Agreements require Defendants to pay to pay liquidated damages of ten percent (10%) for each delinquent contribution, or twenty percent (20%) for each delinquent contribution that is the subject of litigation. *Id.* These agreements also provide for the accrual of interest on delinquent contributions at rates set by the Trustees from the day contributions become delinquent until they are paid. *Id.*

The Bargaining Agreements require Defendants to maintain time records, and to submit all relevant records to Plaintiffs for examination to determine whether Defendants are making full and prompt payment of all sums required to be paid by them to Plaintiffs. *Id.* ¶ 15. If an audit of Defendants' records reveals that Defendants have failed to provide full and prompt payment of all sums due, Defendants must reimburse Plaintiffs for the amounts due, including audit fees, in addition to any other obligations pursuant to the Bargaining and Trust Agreements. *Id.*

**C.**     **Defendants' Failure to Comply with Reporting and Contribution Requirements**

Plaintiffs allege that Defendants have failed and refused to report and pay fringe benefit contributions for hours worked by their employees for the months October 2021 through December 2022. *Id.* ¶ 21. Plaintiffs allege that Defendants owe Plaintiffs liquidated damages and interest for the unreported and unpaid contributions for those months. *Id.* Plaintiffs allege that Defendants also failed to pay their January 2023 contributions, which Plaintiffs allege were due on February 15, 2023 and would become delinquent if not paid in full by February 28, 2023. *Id.* Plaintiffs further allege that Plaintiffs are entitled to recover contributions, liquidated damages and interest for any months Defendants failed to report to Plaintiffs through the time of judgment. *Id.* ¶ 22.

**D.**     **Estimated Contributions, Liquidated Damages and Interest Owed**

The Trust Funds establish collection procedures for bargaining unit employees. First

United States District Court
Northern District of California

1   Williams Decl. ¶¶ 21–22, ECF No. 69 & Ex. F to First Williams Decl. § III.(G), ECF No. 69-6;

2   Jhans Decl. ¶ 32, ECF No. 70; Supp. Williams Decl. ¶ 2, ECF No. 88.  On February 11, 2020, the

3   Board of Trustees approved and adopted a set of collection procedures that were in effect from

4   February 11, 2020 through May 8, 2023 ("2020 Collection Procedures").  Supp. Williams Decl.

5   ¶ 3.  On May 9, 2023, the Board of Trustees adopted an updated version of the Collection

6   Procedures ("2023 Collection Procedures"), which went into effect May 9, 2023 and remains in

7   effect today.  *Id.* ¶ 4.

8          The 2020 Collection Procedures authorize the Trust Funds to estimate monthly unreported

9   contributions based on the greater of (1) the last report submitted, (2) the average of the last three

10  months reported,[3] or (3) the average of the last three months.  Supp. Williams Decl. ¶¶ 6 & Ex. G

11  to Supp. Williams Decl. § III.(G), ECF No. 88-1.  The last three months in which hours were

12  reported were June 2020 ($1,138.24), May 2020 ($11,404.75), and April 2020 ($4,158.50).  Jhans

13  Decl. ¶ 32(b).  The average of the figures for April, May and June 2020 is $5.567.16.  *Id.*  Because

14  Defendants have not submitted any contribution reports since 2021, the average of the last three

15  calendar months is $0.00.  *Id.* ¶ 32(c); Christophersen Decl. ¶ 4, ECF No. 68.  As the greater of

16  these three estimated monthly contributions is $5,567.16, the unreported contributions owed total

17  $5,567.16 per month unreported during the period in which the 2020 Collection Procedures

18  applied.  Jhans Decl. ¶ 32(d).  The 2023 Collection Procedures authorize the Trust Funds to

19  estimate monthly unreported contributions based on the greater of (1) the last report submitted in

20  which hours were reported, (2) the average of the last three months reported, or (3) the average of

21  the last three months.  First Williams Decl. ¶¶ 21–22 & Ex. F to First Williams Decl., § III.(G),

22  ECF No. 69-6.  The last report submitted by Defendants in which hours were reported was June

23  2020 ($1,138.24 in contributions reported).  Jhans Decl. ¶ 32(a).  The last three months in which

24  hours were reported were June 2020 ($1,138.24), May 2020 ($11,404.75), and April 2020

25

26  _____

27  [3] Williams avers that for as long as he has served as the Chairman Trustee of the Plaintiff Trust
    Funds, "it has been the Board of Trustees['] intention" that "the average of the last 3 months
    reported" be interpreted as the average of the last three months in which the employer reported

28  more than zero hours in each of those three months.  Supp. Williams Decl. ¶ 10.  Defendants have
    not disputed this characterization.

United States District Court
Northern District of California

($4,158.50). *Id.* ¶ 32(b).  The average of these three numbers is $5.567.16. *Id.*  Because Defendants have not submitted any contribution reports since 2021, the average of the last three calendar months is $0.00. *Id.* ¶ 32(c).  As the greater of these three estimated monthly contributions is $5,567.16, the unreported contributions owed during the period in which the 2023 Collection Procedures applied is likewise $5,567.16 per month unreported.  *Id.*

Plaintiffs' counsel avers that as of Plaintiffs' April 3, 2025, filing of the instant Motion for Default Judgment, Defendants have not submitted contributions reports for 41 months, from October 2021 through February 2025, inclusive.  *Id.* ¶ 33.  Thus, the total estimated contributions owed by Defendants totals $228,253.56.[4]  *Id.*  The Bargaining and Trust Agreements authorize liquidated damages in the amount of twenty percent (20%) for each delinquent contribution that is the subject of litigation.  First Williams Decl. ¶ 17.  Twenty percent of the total delinquent contributions ($228,253.56) is $45,650.71.[5]  Jhans Decl. ¶ 75.  Both the 2020 and 2023 Collection Procedures provide the provide for "[s]imple interest of 5% per annum assessed on contributions only (and not on liquidated damages) . . . remaining unpaid after the delinquency date."  ECF No. 88-1, Ex. G to Supp. Williams Decl. § I.(D) (Collection Procedures adopted by Board of Trustees Feb. 11, 2020); Ex. F to First Williams Decl. § I.(D) (Collection Procedures approved May 9, 2023).  "Interest shall accrue from the delinquency date (first date of the month following the date payment was due) until paid."  Ex. G to Supp. Williams Decl. § I.(D); Ex. F to First Williams Decl. § I.(D).  Plaintiffs' counsel avers that as of April 2, 2025, Defendants' outstanding delinquent contributions have accrued interest in the amount of $19,023.56.  Jhans Decl. ¶¶ 34–75.

## E.    Estimated Attorney's Fees Owed

Plaintiffs' counsel avers that through February 28, 2025, Plaintiffs have incurred $23,505.58 in attorneys' fees and costs, including attorneys' fees of $20,745.00 and costs of $2,760.58.  Mot. at 12; Jhans Decl. ¶¶ 77–87.

---

[4] This sum is based on a monthly contribution of $5,567.16, rounded to the nearest hundredth.
Using unrounded totals, the total estimated contribution would be slightly larger ($228,253.67).
[5] This sum is based on a monthly contribution of $5,567.16, rounded to the nearest hundredth.
Using unrounded totals, the total estimated liquidated damages would be slightly larger
($45,650.74).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

At the default judgment stage, the factual allegations of the complaint, except those concerning damages, "together with other competent evidence submitted" are deemed admitted by the non-responding parties.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true.").  "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotation omitted)). Therefore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV*, 503 F.3d at 854.  Further, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   DISCUSSION

### A.   Jurisdiction

In considering whether to enter default judgment, a district court must first determine

6

whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (considering subject matter jurisdiction on a 12(b)(1) motion).

### 1.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that district courts are "obligated to consider sua sponte whether [they] have subject matter jurisdiction"). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331. A cause of action "arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989). A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state." *Id.*

Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). The Court also has subject matter jurisdiction pursuant to 29 U.S.C. §§ 185(a), (c) (providing district courts jurisdiction to hear suits to enforce terms of collective bargaining agreements).

### 2.    Personal Jurisdiction

#### a.    Basis for Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712. "Without a proper basis

7

for [personal] jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007). Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Absent one of the traditional bases for jurisdiction, the Due Process Clause requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction is proper. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

Personal jurisdiction also requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

Here, the Court can exercise personal jurisdiction under ERISA section 502(e)(2), which provides that an action may brought against a defendant ". . . in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). "[S]ervice on a defendant in an ERISA case anywhere in the United States is sufficient to establish personal jurisdiction, and there is no need to engage in the 'minimum contacts' analysis." *Schuett v. FedEx Corp. Retirement Appeals Comm.*, 2015 WL 4484153, at *5

1   (N.D. Cal. July 22, 2015) (citing *Cripps*, 980 F.2d at 1267).  Defendants were properly served

2   with the summons and amended complaint under Idaho law.  Jhans Decl. ¶¶ 3, 12; ECF No. 10

3   (Summons Returned Executed); *see* Cal. Code Civ. Proc. § 416.10(a) (service on corporation).

4   Because the Trust Funds are administered in the Northern District of California, the breach took

5   place within this district, and the Entity Defendants were properly served, jurisdiction is proper.

6       Defendants have also consented to personal jurisdiction, as they previously appeared in

7   this action, filed an answer, and participated in a settlement conference with a Magistrate Judge of

8   this Court.  ECF Nos. 22, 27, 28.  Thus Defendants have consented to personal jurisdiction.

9   *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("[A] party has consented to personal

10  jurisdiction when the party took some kind of affirmative act . . . that fairly invited the court to

11  resolve the dispute between the parties.").  Moreover, Defendants filed an answer to Plaintiffs'

12  complaint and did not seek to dismiss Plaintiffs' amended complaint for lack of personal

13  jurisdiction, insufficient process or insufficient service of process.  *See* Fed. R. Civ. P. 12(b)(2),

14  (4), (5).  Accordingly, any objections to service of process have also been waived.

**B.    *Eitel* Factors**

16      Applying the seven *Eitel* factors, the Court finds default judgment is warranted in favor of

17  Plaintiffs.

18          **1.    The Possibility of Prejudice**

19      The first factor the Court considers is the possibility of prejudice if a default judgment is

20  not entered.  *Eitel*, 782 F.2d at 1471–72.  This factor weighs in favor of default judgment "when a

21  defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek

22  relief." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962

23  (N.D. Cal. 2019) (citations omitted); *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal.

24  2010) (prejudice exists where denying the requested default judgment would leave the plaintiff

25  without a proper remedy).  Entity Defendants do not appear to have defended against the suit since

26  February 14, 2024, when the parties attended a Court-mandated settlement conference.  *See* ECF

27  No. 34; Chambers Decl. ¶¶ 7–11, ECF No. 37-1.  Because Entity Defendants have failed to defend

28  against Plaintiff's suit, Plaintiffs would be prejudiced absent a default judgment because they

would have no remedy to recover any amounts Entity Defendants owe.

This factor favors Plaintiffs because "if the Court were to deny their request, Plaintiffs would have no other avenue for recovery, and further delay in securing a judgment would only increase the chan[c]es that Plaintiffs will be unable to recover the amounts owed." *Bd. of Trs. of U.A. Local No. 159 Health & Welfare Tr. Fund v. RT/DT, Inc.*, 2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013) (granting default judgment in ERISA case) (citing *Board of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. C & L Coatings, Inc.*, 2012 WL 7748318, at *4 (N.D. Cal. Dec. 18, 2012) (same)). "Because ERISA provides that federal courts have exclusive jurisdiction for claims of this nature, denial of Plaintiffs' Motion would leave them without a remedy." *Id.*

### 2.    Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of the substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72. "These two factors are often analyzed together and require courts to consider whether a plaintiff has 'state[d] a claim on which [it] may recover.'" *Vietnam Reform Party*, 416 F. Supp. 3d at 962 (quoting *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). "Of all the *Eitel* factors, courts often consider the second and third factors to be 'the most important.'" *Id.* (quoting *Sanrio, Inc. v. Jay Yoon*, 2012 WL 610451, at *4 (N.D. Cal. Feb. 24, 2012)).

Plaintiffs' claim is for unpaid contributions in violation of ERISA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 515 creates a federal cause of action against employers who do not make timely contributions to employee benefit plans, and it allows plan fiduciaries to enforce obligations created under the collective bargaining agreement. *Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009). To succeed, Plaintiffs must prove: (1) the Trust Funds are multiemployer plans under 29 U.S.C.

United States District Court
Northern District of California

§ 1002(37); (2) the collective bargaining agreement obligated Entity Defendants to make the employee benefit contributions; and (3) Entity Defendants failed to make the contribution payments pursuant to the collective bargaining agreement. *Board of Trs. of Laborers Health & Welfare Tr. Fund for N. California v. C & L Coatings, Inc.*, No. 12-cv-1368-PJH-MEJ, 2012 WL 7748318, at *4 (N.D. Cal. Dec. 18, 2012), *report and recommendation adopted sub nom. Board of Trs. v. C & L Coatings, Inc.*, No. 12-cv-1368-PJH, 2013 WL 1087849 (N.D. Cal. Mar. 13, 2013). In this case, Plaintiffs' complaint and supporting materials allege facts sufficient to prove the necessary elements.

First, the defendants must be deemed employers before they are bound to comply with section 515 of ERISA, 29 U.S.C. § 1145. An "employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). Entity Defendants are employers within the meaning of ERISA section 3(5), 29 U.S.C. § 1002(5). Am. Compl. ¶ 2.

Second, under section 515 of ERISA, an employer must be bound under a collective bargaining agreement to make employee contributions to a multiemployer plan. *C & L Coatings*, 2012 WL 7748318, at *5. Under ERISA, multiemployer plans are employee benefit pension plans made pursuant to one or more collective bargaining agreements and to which more than one employer contributes. 29 U.S.C. §§ 1002(3), (37). Here, the Trust Funds were established as employee benefit plans under ERISA and Entity Defendants' obligation to contribute to the benefit plans arose out of the parties' agreements.

Third, Entity Defendants failed to make timely contribution payments. Am. Compl. ¶¶ 21, 32. Thus, Plaintiffs are entitled to any unpaid contributions, interest on any unpaid contributions, liquidated damages on any unpaid and late-paid contributions, reasonable attorneys' fees and costs, and all other reasonable expenses under 29 U.S.C. § 1132(g)(2).

Thus, Plaintiffs have stated a claim on which they may recover against Entity Defendants. Accordingly, the second and third *Eitel* factors support the entry of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (citation and quotation marks omitted). When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

As detailed below, Plaintiffs request a total of $316,433.41, including $292,927.83 in unreported estimated contributions, $20,745.00 in attorney's fees and $2,760.58 in costs. As this amount is tailored to Defendants' specific misconduct, it is appropriate for default judgment. *See Church Bros., LLC v. Garden of Eden Produce, LLC*, 2012 WL 1155656, at *3 (N.D. Cal. Apr. 5, 2012) ($212,259.21 deemed "modest" and "far less than [the $2.9 million] contemplated by the court in *Eitel*").

This factor, therefore, supports the entry of default judgment.

### 4. The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471–72. Here, Entity Defendants previously filed an answer denying Plaintiffs' claims. ECF No. 22. However, upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DIRECTV, Inc.*, 503 F.3d at 851 (citing Fed. R. Civ. P. 55(a)). The court finds that Plaintiffs have adequately alleged breach of the Bargaining and Trust Agreements and violations of ERISA by both Entity Defendants, under a theory that Entity Defendants and Defendant Kevin Herron, individually and doing business as Herron Painting Co. (a sole proprietorship) were or are operating as a single employer and/or are continuations, successors or alter egos of one another. *See* Am. Compl. ¶¶ 16–21. As outlined above, Plaintiffs provided the Court with well-pleaded

United States District Court
Northern District of California

allegations supporting the claims.

Moreover, in April 2024, Plaintiffs issued Requests for Admissions ("RFAs") to Entity Defendants. Jhans Decl. ¶¶ 18, 22, 23 & Exs. G and H to Jhans Decl. Neither Herron Painting Co. (a California Partnership) nor Herron Painting, Inc. responded to Plaintiffs' RFAs, and the deadline for response has expired. Jhans Decl. ¶¶ 22, 23. Thus, each of Plaintiffs' Requests for Admissions is deemed admitted and thus "conclusively established unless the court, on motion, permits the admission[s] to be withdrawn or amended." Fed. R. Civ. P. 36(a)(3), 36(b). No such motion has been filed. The RFAs establish, *inter alia*, that Defendant Herron Painting Co. (a California partnership) is bound by the 2011–2014 and 2014–2017 Northern California Painters Master Agreements and has not timely terminated any collective bargaining agreement with District Council 16 on behalf of itself or any other person or entity, and that it ceased painting operations in or around 2017 and that those operations were transferred at that time to Defendant Herron Painting Inc. RFAs to Def. Herron Painting Co. (a California Partnership) ¶¶ 4–6, 13–14, Ex. G to Jhans Decl. The RFAs to Defendant Herron Painting Inc. establish that it is bound by the 2017–2020 Northern California Painters Master Agreement, has not timely terminated any collective bargaining agreement with District Council 16 on behalf of itself or any other person or entity, and that its painting operations were transferred to the sole proprietorship of Defendant Kevin Herron between January 1, 2020 and December 31, 2021. RFAs to Def. Herron Painting Inc. ¶¶ 2–3, 10, Ex. H to Jhans Decl. Because these facts are deemed conclusively established, there is no likelihood of dispute as to the application of the Master Agreements to Entity Defendants.

Accordingly, this factor weighs in favor of default judgment.

### 5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's default was the result of excusable neglect. *Eitel*, 782 F.2d at 1471–72. Here, Plaintiffs provided Entity Defendants adequate notice of this action. *See* Jhans Decl. ¶ 12; ECF No. 10. Defendants retained counsel, filed an answer, and attended a settlement conference in February 2024 before their counsel withdrew as counsel of record in this action. Jhans Decl. ¶¶ 14–17; ECF Nos. 22, 34, 37, 41. The Court informed Entity

United States District Court
Northern District of California

1    Defendants that failure to retain substitute counsel could result in the entry of default judgment

2    against them. ECF Nos. 41 at 5, 45 at 1. Defendants were notified of the entry of default. ECF

3    No. 57.

4          Since then, Entity Defendants have failed to retain substitute counsel, failed to make a

5    motion to vacate the default, and failed to respond to the present motion. *See S.E.C. v. Internet*

6    *Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ("A signed return of service constitutes

7    prima facie evidence of valid service which can be overcome only by strong and convincing

8    evidence.") (simplified). There is nothing in the record suggesting this failure is based on

9    excusable neglect. *See Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1005 (default

10   after proper service was not excusable neglect). Thus, this factor supports default judgment.

11         **6.    Policy Favoring Deciding a Case on its Merits**

12         The last *Eitel* factor examines whether the policy of deciding a case based on the merits

13   precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit

14   admonished that "[c]ases should be decided upon their merits whenever reasonably possible." *Id.*

15   "The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not

16   dispositive." *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, 2015 WL

17   4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's Fund*, 1996 WL 75314,

18   at *3 (N.D. Cal. Feb. 13, 1996)). Further, "deciding the case on the merits is impossible where a

19   party refuses to participate." *Vietnam Reform Party*, 416 F. Supp. 3d at 970. Here, Defendants

20   have failed to respond to the present motion, or indeed to any motion in the last eleven months.

21   Because Defendants made no effort to respond to communication attempts by Plaintiffs or their

22   own counsel and have by all accounts ceased to participate in the proceedings, the policy in favor

23   of deciding a case on its merits "weighs against, but does not preclude, entry of default judgment."

24   *Id.*; *see also Bd. of Trs. v. Diversified Concrete Cutting, Inc.*, 2018 WL 3241040, at *5 (N.D. Cal.

25   July 3, 2018), *report and recommendation adopted sub nom. Bd. of Trustees as Trs. of Laborers*

26   *Health & Welfare Tr. Fund for N. Cal. v. Diversified Concrete Cutting, Inc.*, 2018 WL 4775429

27   (N.D. Cal. July 27, 2018) (If defendants fail to participate in the proceedings, a decision on the

28   merits is impracticable, and in "situations such as this, Rule 55(b) allows the court to grant default

judgment."); *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

### 7.    Summary of the *Eitel* Factors

In sum, the majority of the *Eitel* factors weigh in favor of granting default judgment. Accordingly, the Court **GRANTS** the motion and enters default judgment against Entity Defendants.

### C.    Relief Sought

The Court next turns to the relief sought by Plaintiffs.  Once liability is established, the plaintiff must then establish that the requested relief is appropriate.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

Plaintiffs seek judgment in the following amount:

| Amounts Sought | | | | |
|---|---|---|---|---|
| Work Month | Estimated Unpaid Contributions[6] | Liquidated Damages (20%) | 5% interest (calculated through 4/2/25) | Subtotal |
| Oct. 2021 | $5,567.16 | $1,113.43 | $926.44 | $7,607.03 |
| Nov. 2021 | $5,567.16 | $1,113.43 | $902.88 | $7,583.47 |
| Dec. 2021 | $5,567.16 | $1,113.43 | $879.32 | $7,559.91 |
| Jan. 2022 | $5,567.16 | $1,113.43 | $858.04 | $7,538.63 |
| Feb. 2022 | $5,567.16 | $1,113.43 | $834.48 | $7,515.07 |
| Mar. 2022 | $5,567.16 | $1,113.43 | $811.68 | $7,492.27 |
| Apr. 2022 | $5,567.16 | $1,113.43 | $788.12 | $7,468.71 |
| May 2022 | $5,567.16 | $1,113.43 | $765.32 | $7,445.91 |
| Jun. 2022 | $5,567.16 | $1,113.43 | $741.76 | $7,422.35 |
| Jul. 2022 | $5,567.16 | $1,113.43 | $718.20 | $7,398.79 |
| Aug. 2022 | $5,567.16 | $1,113.43 | $695.40 | $7,375.99 |
| Sep. 2022 | $5,567.16 | $1,113.43 | $671.84 | $7,352.43 |
| Oct. 2022 | $5,567.16 | $1,113.43 | $649.04 | $7,329.63 |
| Nov. 2022 | $5,567.16 | $1,113.43 | $625.48 | $7,306.07 |
| Dec. 2022 | $5,567.16 | $1,113.43 | $601.92 | $7,282.51 |
| Jan. 2023 | $5,567.16 | $1,113.43 | $580.64 | $7,261.23 |

---

[6]  As of April 2, 2025, none of these amounts have been paid to the Trust Funds.  Jhans Decl. ¶ 87.

United States District Court
Northern District of California

| | | | | |
|---|---|---|---|---|
| Feb. 2023 | $5,567.16 | $1,113.43 | $557.08 | $7,237.67 |
| Mar. 2023 | $5,567.16 | $1,113.43 | $534.28 | $7,214.87 |
| Apr. 2023 | $5,567.16 | $1,113.43 | $510.72 | $7,191.31 |
| May 2023 | $5,567.16 | $1,113.43 | $487.92 | $7,168.51 |
| Jun. 2023 | $5,567.16 | $1,113.43 | $464.36 | $7,144.95 |
| Jul. 2023 | $5,567.16 | $1,113.43 | $440.80 | $7,121.39 |
| Aug. 2023 | $5,567.16 | $1,113.43 | $418.00 | $7,098.59 |
| Sep. 2023 | $5,567.16 | $1,113.43 | $394.44 | $7,075.03 |
| Oct. 2023 | $5,567.16 | $1,113.43 | $371.64 | $7,052.23 |
| Nov. 2023 | $5,567.16 | $1,113.43 | $348.08 | $7,028.67 |
| Dec. 2023 | $5,567.16 | $1,113.43 | $324.52 | $7,005.11 |
| Jan. 2024 | $5,567.16 | $1,113.43 | $302.48 | $6,983.07 |
| Feb. 2024 | $5,567.16 | $1,113.43 | $278.92 | $6,959.51 |
| Mar. 2024 | $5,567.16 | $1,113.43 | $256.12 | $6,936.71 |
| Apr. 2024 | $5,567.16 | $1,113.43 | $232.56 | $6,913.15 |
| May 2024 | $5,567.16 | $1,113.43 | $209.76 | $6,890.35 |
| Jun. 2024 | $5,567.16 | $1,113.43 | $186.20 | $6,866.79 |
| Jul. 2024 | $5,567.16 | $1,113.43 | $162.64 | $6,843.23 |
| Aug. 2024 | $5,567.16 | $1,113.43 | $139.84 | $6,820.43 |
| Sep. 2024 | $5,567.16 | $1,113.43 | $116.28 | $6,796.87 |
| Oct. 2024 | $5,567.16 | $1,113.43 | $93.48 | $6,774.07 |
| Nov. 2024 | $5,567.16 | $1,113.43 | $69.92 | $6,750.51 |
| Dec. 2024 | $5,567.16 | $1,113.43 | $46.36 | $6,726.95 |
| Jan. 2025 | $5,567.16 | $1,113.43 | $25.08 | $6,705.67 |
| Feb. 2025 | $5,567.16 | $1,113.43 | $1.52 | $6,682.11 |
| **Subtotal** | **$228,253.56** | **$45,650.63** | **$19,023.56** | **$292,927.75** |
| **Total Estimated Unpaid Contributions, Liquidated Damages and Interest** | | | | **$292,927.75** |
| **Attorneys' Fees and Costs** | | | | |
| Attorneys' Fees | | | | $20,745.00 |
| Costs | | | | $2,760.58 |
| **Total Attorneys' Fees and Costs** | | | | **$23,505.58** |
| **GRAND TOTAL** | | | | **$316,433.33[7]** |

Jhans Decl. ¶¶ 33–75, 84–86.

### 1.   Damages

The moving party has the burden to "prove up" the amount of damages.  *United States v.*

---

[7] In their motion and accompanying declarations, Plaintiffs state that they seek $292,927.83 in unpaid contributions, liquidated damages, and interest, and $316,433.41 overall.  Mot. at 1; Jhans Decl. par. 75 (ECF No. 70 at 17).  However, Plaintiffs' monthly estimated unpaid contributions, liquidated damages, and interest add up to $292,927.75, and accordingly to $316,433.33 in overall relief sought.

*Sundberg*, 2011 WL 3667458, at *6 (N.D. Cal. Aug. 22, 2011) (citation omitted). Where the amount of damages "is liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits, the Court may enter default judgment without a hearing on damages." *Id.* (internal quotation marks and citation omitted); *see also Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."). Similarly, if the plaintiff can meet its burden of proving an amount of damages "capable of mathematical calculation" through evidence, testimony, or written affidavit, there is no need for an evidentiary hearing on damages. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *Bd. of Trs. of the Boilermaker Vacation Trust v. Shelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). ERISA authorizes Plaintiffs to recover unpaid contributions under 29 U.S.C. § 1132(g)(2)(A), interest under § 1132(g)(2)(B), and the greater of interest or liquidated damages under § 1132(g)(2)(C).

It is settled Ninth Circuit law that an award of liquidated damages under 29 U.S.C. § 1132(g)(2)(C) "is mandatory and not discretionary." *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984). For a mandatory award of liquidated damages, three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996). Plaintiffs satisfy all three requirements.

First, Plaintiffs have established that Entity Defendants were delinquent in making their contribution payments and have not submitted contributions reports and paid contributions on hours worked by their employees for the months of October 2021 through February 2025. Christophersen Decl. ¶ 4. Plaintiffs have provided a breakdown of all unpaid contributions. Jhans Decl. ¶¶ 33–75. The Parties' agreements authorize the Board of Trustees to formulate and implement rules regarding the collection of employer contributions, including the methods by which Plaintiffs may estimate unreported amounts due. *Id.* ¶ 32; First Williams Decl. ¶ 21; Supp.

17

United States District Court
Northern District of California

Williams Decl. ¶ 2.

Second, as discussed above, the Court enters judgment against Entity Defendants. Pursuant to the terms of the parties' agreements, Defendants are liable for liquidated damages of 20% for each delinquent contribution that is the subject of litigation and 5% interest per annum on unpaid and late-paid contributions from the date that they were delinquent until present, as well as attorneys' fees and costs. First Williams Decl. ¶¶ 17–19. In addition, "[c]ourts in the Ninth Circuit have made a limited exception [to the requirement that default judgment be constrained by the remedies sought in the complaint] for delinquent contributions that come due after a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA." *Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008); *Trs. of Bricklayers Local No. 3 Pension Trust v. Huddleston*, 2013 WL 2181532, at *4 (N.D. Cal. May 20, 2013); *Roofers Local Union No. 81 v. Wedge Roofing*, 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992).

Accordingly, the Court finds Plaintiffs have met their burden of showing entitlement to liquidated damages and recommends the Court award unpaid contributions, liquidated damages, and interest in the amount of $292,927.75.

### 2.    Attorneys' Fees

Plaintiffs seek $20,745.00 in attorneys' fees for hours worked by Plaintiffs' counsel from March 25, 2022 through February 28, 2025. Jhans Decl. ¶¶ 78–84. Plaintiffs also seek reimbursement of costs in the amount of $2,760.58. *Id.* ¶ 85. ERISA requires the Court to award "reasonable attorney's fees and costs of the action" when a plaintiff obtains a judgment in their favor or otherwise obtains the relief sought. 29 U.S.C. § 1132(g)(2)(D); *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 253, 258 (9th Cir. 1996). Similarly, the Bargaining and Trust Agreements provide that Entity Defendants must reimburse Plaintiffs for attorneys' fees and any other expenses, including costs and audit fees, incurred in connection with the collection of delinquent contributions. First Williams Decl. ¶ 19. Pursuant to Civil Local Rule 54-5(b)(2)-(3), Plaintiffs' counsel submitted the Declaration of Siddharth Jhans, which summarizes the background and experience of the attorneys and paralegals who performed work on this matter and

their hourly rates.  Jhans Decl. ¶ 78.  Plaintiffs also provided detailed billing records.  *Id.* ¶¶ 79 –

84 & Exs. L, M.

Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set

forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See Fischer v. SJB-P.D. Inc.*, 214 F.3d

1115, 1119 (9th Cir. 2000).  A reasonable fee is determined by multiplying (1) "the number of

hours reasonably expended on the litigation" by (2) "a reasonable hourly rate."  *Hensley*, 461 U.S.

at 433.  The lodestar amount may also be adjusted based on an evaluation of the factors articulated

in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been

subsumed in the lodestar calculation.  *See Fischer*, 214 F.3d at 1119 (citation omitted).

### a.    Reasonableness of Hourly Billing Rate

To determine the appropriate lodestar amount, the Court must first assess the

reasonableness of counsel's claimed hourly billing rate.  *Credit Managers Ass'n of S. California v.*

*Kennesaw Life & Acc. Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994).  Courts look to the prevailing

market rates in the relevant community for similar work by attorneys of comparable skill,

experience, and reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Generally, the relevant community is the forum where the district court sits.  *Id.*  The applicant

bears the burden to produce sufficient evidence that the rates claimed for its attorneys are in line

with prevailing market rates.  *Fischer*, 214 F.3d at 1121 (citing *Hensley*, 461 U.S. at 433).

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

community, and rate determinations in other cases, particularly those setting a rate for the

plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers*

*of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Put differently, the party

seeking fees bears the burden to prove the reasonableness of hours expended using detailed time

records documenting completed tasks and time expended.  *Hensley*, 461 U.S. at 437; *Roberts v.*

*City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney

seeking fees to submit evidence to support the requested hourly rate.").

When a party seeking fees submits declarations, courts must consider those declarations

and cannot substitute that analysis by only considering previous fee awards.  *Roberts*, 938 F.3d at

1    1024 ("The district court diverged from the applicable standard in discarding the declarations

2    entirely and considering *only* previous fee awards in determining the prevailing market rate.")

3    (emphasis in original).  Indeed, the Ninth Circuit has explained that solely "[e]xamining prior fee

4    awards to [even the same attorneys] in the district [is] not an acceptable substitute for considering

5    the declarations submitted by [that attorney], and explaining why those declarations did or did not

6    establish the prevailing hourly rate in the district."  *Id.* at 1025.

7         Counsel charged Plaintiffs $285-$325 per hour for a shareholder attorney, $300 per hour

8    for an associate attorney (Senior Counsel), and $165-$185 for a paralegal.  Jhans Decl. ¶ 78.

9    Plaintiffs' counsel has previously been awarded similar rates for their work in similar ERISA

10    cases in this District.  *See Operating Eng'rs Health & Welfare Tr. Fund for N. California v. FD

11    Underground, Inc.*, No. 22-cv-04772-TSH, 2024 WL 4627043, at *12 (N.D. Cal. Feb. 9, 2024),

12    *report and recommendation adopted*, No. 22-cv-04772-VC, 2024 WL 4627126 (N.D. Cal. Feb.

13    26, 2024); *Operating Engineers Health & Welfare Tr. Fund for N. California v. Brambila &

14    Kelley Inc.*, 2023 WL 8482750, at *13 (N.D. Cal. Nov. 9, 2023), *report and recommendation

15    adopted*, 2023 WL 8482866 (N.D. Cal. Dec. 7, 2023).  Further, an hourly rate of $650 for lead

16    counsel and $190 for senior paralegals has been found to be reasonable for Bay Area ERISA

17    specialists.  *Villasenor v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, 2021 WL 242924, at

18    *9 (N.D. Cal. Jan. 25, 2021); *see also Echague v. Metro Life Ins. Co.*, 69 F. Supp. 3d 990, 996-97

19    (N.D. Cal. 2014) (finding $650 for lead counsel, $250 for associates, and $135 for paralegals was

20    reasonable for ERISA legal professionals in the Bay Area).  Here, the billing rates of Plaintiffs'

21    attorneys and paralegals fall at or below comparable rates that other courts have found reasonable

22    for ERISA work in this area.  Therefore, the undersigned finds the rates charged by Plaintiffs'

23    attorneys are reasonable.

24                    **b.        Reasonableness of Hours Billed**

25         Having determined the reasonable hourly rate to be applied, the undersigned proceeds to

26    determine the number of hours reasonably expended on the litigation.  *Fischer*, 214 F.3d at 1119.

27    The Court "may not attempt to impose its own judgment regarding the best way to operate a law

28    firm, nor to determine if different staffing decisions might have led to different fee requests."

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008).  The Ninth Circuit has

2    recently explained that "district courts have a *duty* to ensure that claims for attorneys' fees are

3    reasonable, and a district court does not discharge that duty simply by taking at face value the

4    word of the prevailing party's lawyers for the numbers of hours expended on the case.  Rather, a

5    district court must ensure that the winning attorneys have exercised billing judgment."  *Vogel v.*

6    *Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (emphasis in original; quotation

7    marks and citations omitted).

8        Plaintiffs' counsel has submitted detailed billing records.  Jhans Decl. ¶ 84, Exs. L, M.

9    The billing records are itemized by timekeeper and clearly detail the amount of time spent on each

10   billed task by each timekeeper.  The records do not suggest duplicative billing or an unreasonably

11   high number of hours spent on any one task.

12       However, Plaintiffs also seek relief for work which is clerical in nature.  In *Missouri v.*

13   *Jenkins*, the Supreme Court observed that "purely clerical or secretarial tasks should not be billed

14   at a paralegal [or lawyer's] rate, regardless of who performs them."  491 U.S. 274, 288 n.10

15   (1989).  Instead, such clerical tasks should be "subsumed in firm overhead."  *Nadarajah v.*

16   *Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("filing, transcript, and document organization time was

17   clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal

18   rates"); *Hernandez v. Spring Charter Inc.*, 2020 WL 1171121, at *7 (N.D. Cal. Mar. 11, 2020)

19   ("preparing proofs of service, processing records, posting letters for mail, photocopying, three-

20   hole punching, internal filing, calendaring, and preparing the summons and complaint for filing

21   have been found to be purely clerical tasks"); *League of Wilderness Defs./Blue Mountains*

22   *Biodiversity Project v. Turner*, 305 F. Supp. 3d 1156, 1171 (D. Or. 2018), *appeal dismissed sub*

23   *nom. League of Wilderness Defs./Blue Mountains Biodiversity Project v. United States Forest*

24   *Serv.*, 2019 WL 4453723 (9th Cir. Mar. 8, 2019) ("Tasks considered clerical include, but are not

25   limited to, filing motions with the court, filling out and printing documents, preparing affidavits

26   and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions,

27   and sending documents.") (citation omitted).

28       Thus, the undersigned finds counsel submit a reasonable number of hours billed.

However, of the 31.5 paralegal hours billed by Plaintiffs' counsel, 29 timekeeping entries totaling 8.7 hours include some measure of clerical work as defined by judges in this district.  Exs. L, M, N to Jhans Decl.  In other cases, judges in this district have deducted 0.1 hour per clerical task interspersed in entries with non-clerical tasks.  *See Hernandez v. Spring Charter Inc.*, 2020 WL 1171121, at *8 (N.D. Cal. Mar. 11, 2020); *Crandall v. Starbucks Corp.*, 2016 WL 2996935, at *4 (N.D. Cal. May 25, 2016).  Following this rule and the data above, the Court deducts 5.2 hours of paralegal work time, amounting to a total deduction of $940.00.  Accordingly, the Court awards Plaintiffs $19,805 in attorneys' fees.

The entries in question are recreated below:

| Date | Employee | Hours | Dollars | Hours After Deduction | Fee Award After Deduction | Task |
|---|---|---|---|---|---|---|
| 4/17/2024 | JC | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service affidavits re service of discovery request and update file regarding same.** |
| 4/18/2024 | JC | 0.1 | $18.50 | 0.0 | $0.00 | **Review compulaw/calendaring re settlement conference.** |
| 2/7/2023 | NS | 0.5 | $87.50 | 0.0 | $0.00 | **Prepare service packet; finalize and issue same via First Legal for service on Defendants;** |
| 2/16/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review scheduling order; **case management;** update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same; |
| 2/28/2023 | NS | 0.4 | $70.00 | 0.0 | $0.00 | **Communications with M. Minser re service; update proof of service packet; finalize and issue same via First Legal for routine service;** |
| 4/3/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review M. Minser's email communications re proof of services; **Finalize and file Summons Returned** |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | **Executed;** |
| 4/24/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review ORDER re Request to Continue; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same**; email assigned attorney summarizing same; |
| 7/18/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review Clerk's Notice re Telephonic Pre-Settlement Conference date; **update compulaw to reflect all relevant court dates and deadlines associated with same**; email assigned attorney summarizing same; |
| 9/6/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review Min Entry ; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same**; email assigned attorney summarizing same; |
| 9/25/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review Civil Minutes and Settlement Conference date ; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same**; email assigned attorney summarizing same; |
| 10/30/2023 | NS | 0.1 | $17.50 | 0.0 | $0.00 | **Review Minser's email communications re settlement conference calendar evite; communications re time frame; finalize and issue evites; forward responses re same to Minser** |
| 11/29/2023 | NS | 0.2 | $35.00 | 0.1 | $17.50 | **Run costs and fees report; update file re same;** communications with Minser re findings |
| 11/29/2023 | NS | 1.0 | $175.00 | 0.8 | $140.00 | Finalize and file Joint request to continue settlement conference; **issue word version re same to Judge's proposed order unit accordingly;** read settlement conference statement; communications re same with Minser; **combine exhibits;** communications with Minser |

United States District Court
Northern District of California

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | re issuance; finalize and issue same to Judge and opposing counsel |
| 12/1/2023 | NS | 0.1 | $17.50 | 0.0 | $0.00 | **Update zoom link to Trustees re settlement conference** |
| 12/19/2023 | NS | 0.3 | $52.50 | 0.1 | $17.50 | Review Clerks Notice re Continue of Settlement Conference; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |
| 1/26/2024 | NS | 0.4 | $74.00 | 0.1 | $18.50 | Review ORDER re modified schedule, including Discovery, Trial and related deadlines) ; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |
| 2/15/2024 | NS | 0.3 | $55.50 | 0.0 | $0.00 | **Review Min Entry ; update file re same; case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |
| 3/12/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | Review Minser's email communications; **Prepare and issue calendar invite for settlement conference to Trustees;** |
| 3/18/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | Communications with Minser re deadline; **follow up email communications with opposing counsel re deadline; calendar check in accordingly** |
| 3/19/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Additional follow up email communications with opposing counsel re deadline; calendar check in accordingly** |
| 3/18/2024 | NS | 0.5 | $92.50 | 0.0 | $0.00 | **Review scheduling order (discovery, trial dates, etc.) case management; update compulaw to reflect all relevant court dates and deadlines associated with** |

United States District Court
Northern District of California

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | **same; email assigned attorney summarizing same;** |
| 6/10/2024 | NS | 1.0 | $185.00 | 0.8 | $148.00 | Review Certificate of Service submitted by opposing counsel; update file re same; review minute entry; update file re same; review ORDER re entry of default; update file re same; review Minser's email communications re preparation of same; review matter; prepare draft for Minser's review; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same;** email assigned attorney summarizing same; |
| 6/3/2024 | NS | 0.6 | $111.00 | 0.4 | $74.00 | Review proof of service; update file re same; review order; review brief; confirm calculations; **communications with Minser re font; finalize and format same;** issue brief to opposing counsel; finalize letter and issue same to Judge; **review out of office message for opposing counsel;** communications with Minser re further handling; forward same |
| 6/4/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service; update file re same;** |
| 6/11/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service; update file re same;** |
| 6/17/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service filed by opposing counsel; update file re same** |
| 6/18/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service filed by opposing counsel; update file re same** |
| 6/28/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service filed by opposing counsel; update file re same** |
| 10/11/2024 | NS | 0.5 | $92.50 | 0.0 | $0.00 | Review for Case Management Scheduling ORDER; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same; including discovery, pretrial document and trial related deadlines; add** |

| | | | | | | reminders to necessary deadlines; review all for accuracy; email assigned attorney summarizing same; |
|---|---|---|---|---|---|---|

### c.    Lodestar Calculation

Based on this analysis, the Court finds Plaintiffs' counsel's rates and hours expended are reasonable and therefore awards Plaintiffs attorneys' fees in the amount of $19,805.

### 3.    Costs

The court also will award costs if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotation marks omitted); *see* 29 U.S.C. § 1132(g)(2)(D).  Here, Plaintiffs also seek costs in the amount of $2,760.58, comprised of the Complaint filing fee, service of process fees for service of the Summons and Complaint on Defendants, Legal Research of Defendants.  Jhans Decl. ¶ 85 & Exs. L, N.  The Court has reviewed the costs and finds them reasonable.  *See* Civil L.R. 54-3(a) (award of the clerk's filing fee is allowable where, as here it is paid by the claimant); *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr.*, 460 F.3d 1253, 1256-59 (9th Cir. 2006) (approving of awards for computerized research, courier services, facsimile charges, and photocopies); *Sheet Metal Workers Local 104 Health Care Tr. v. Nichols Plumbing & Heating, Inc.*, 2016 WL 8313928, at *9 (N.D. Cal. Dec. 19, 2016) ("[C]ourts have routinely awarded costs for service, messenger services, and investigatory fees in actions brought under 29 U.S.C. § 1132(g)(2)(D).").

Therefore, the Court awards costs in the amount of $2,760.58.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs District Council 16 Northern California Health and Welfare Trust Fund, et al.'s Motion for Default Judgment and enter judgment against Defendants Herron Painting Co. (a California Partnership) and Herron Painting Inc.  The Court further awards Plaintiffs:

(1) Principal in the amount of $228,253.56;

(3) Liquidated damages in the amount of $45,650.63;

United States District Court
Northern District of California

(2) Pre-judgment interest in the amount of $19,023.56;

(4) Attorneys' fees and costs in the amount of $22,565.58, representing $19,805 in attorneys' fees and $2,760.58 in costs.

**IT IS SO ORDERED.**

Dated: May 29, 2025

THOMAS S. HIXSON
United States Magistrate Judge