UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND, et al., | Case No. 23-cv-00458-TSH |
| Plaintiffs, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | Re: Dkt. No. 72 |
| HERRON PAINTING CO.,, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiffs District Council 16 Northern California Health and Welfare Trust Fund, et al. bring this case against Defendants Kevin Herron, Dora Herron, Herron Painting Co., a California Partnership; and Herron Painting, Inc., alleging Defendants failed to report and pay required contributions under the parties' bargaining and trust agreements. Pending before the Court is Plaintiffs' motion for summary judgment against Defendants Kevin Herron and Dora Herron. ECF No. 72. Defendants have not opposed the motion. The Court finds this matter suitable for disposition without oral argument. Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.[1]

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 8, 17.

## II.    BACKGROUND

### A.    The Parties

Plaintiffs are employee benefit plans as defined in the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(37)(A)(29), 29 U.S.C. § 1002(37)(A) (collectively "Trust Funds" or "Plaintiffs"); their respective trustees are the named fiduciaries.  Pls.' Sep. Statement of Undisputed Material Facts ("Sep. Statement") ¶ 1, ECF No. 76.  The Trust Funds are administered in this district and their principal place of business is in the City of Dublin, Alameda County, California.  *Id.* ¶ 2.  Defendants Kevin Herron (individually and as a qualifying Partner of Herron Painting Co.), Dora Herron (individually and as a general partner of Herron Painting Co.), Herron Painting Co. (a California partnership), and Herron Painting, Inc. (a FTB suspended California corporation), are employers within the meaning section 3(5) of ERISA and section 2(2) of the National Labor Relations Act.  *Id.* ¶ 3.

### B.    Collective Bargaining and Trust Agreements

On or about May 24, 2012, Defendant Kevin Herron, on behalf of "Herron Painting", entered into the Northern California Floor Painters Master Agreement between the Union and the Northern California Painting and Finishing Contractors Association ("2011-2014 Master Agreement").  Sep. Statement of Facts, ¶ 23.  On or about January 30, 2015, Defendant Kevin Herron, on behalf of "Herron Painting", entered into the Northern California Floor Painters Master Agreement between the Union and the Northern California Painting and Finishing Contractors Association ("2014-2017 Master Agreement").  *Id.* ¶ 25.  On  or about October 9, 2017, Defendant Kevin Herron, on behalf of "Herron Painting", entered into the Northern California Floor Painters Master Agreement between the Union and the Northern California Painting and Finishing Contractors Association ("2017-2020 Master Agreement") (collectively, the "Bargaining Agreements").  *Id.* ¶ 28.  Plaintiffs are third party beneficiaries of the Bargaining Agreements.  *Id.*

The Bargaining Agreements and Trust Agreements require employers to maintain time records or timecards, and to submit any and all relevant records to Plaintiffs for examination to determine whether it is making full and prompt payment of all sums required to be paid by it to Plaintiffs.  Williams Decl. ¶ 20 (citing Ex. A (2014-2017 Master Agreement), Art. 17, § 5; Ex. D

United States District Court
Northern District of California

(2017-2020 Master Agreement) Art. 17, § 5; Ex. I (District Council 16 Health and Welfare Trust Fund Agreement), Art. III § D; Ex. J, Art. III § D; Exhibit K (Bay Area Painters and Tapers Pension Trust Fund Trust Agreement) Art. III § D).

Each month, employers are sent Contribution Report Forms to self-report the hours worked by their employees each month. Sep. Statement ¶ 43; Williams Decl. ¶ 16. The Bargaining Agreements provide that all contribution report forms with payment are due on or before the fifteenth (15th) day of the month following the month in which hours were worked and are considered delinquent if not received by the end of that month. Sep. Statement ¶ 43; Williams Decl. ¶ 16. (citing Ex. A to Williams Decl. (2011–2014 Master Agreement) Art. 17, § 4(b); Ex. B to Williams Decl. (2014–2017 Master Agreement) Art. 17, § 4(b); Ex. C to Williams Decl. (2017–2020 Master Agreement) Art. 17, § 4(b); Ex. E to Williams Decl. (Trust Fund Agreement) Art. III, § A. If contributions are delinquent, the Bargaining and Trust Agreements mandate that the employer pay liquidated damages and interest assessed on the delinquent contributions. Sep. Statement ¶ 44; Williams Decl. ¶ 16 (citing Ex. A, Art. 17, § 4(c); Ex. B, Art. 17, § 4(c); Ex. C, Art. 17, § 4(c); Ex. E, Art. III § C(2)-(2)).

The Bargaining Agreements require employer contributions to Plaintiffs' ERISA funds, to the Union for union dues, and to other plans described in the Bargaining Agreement. Sep. Statement ¶ 40. Under the terms of the Bargaining Agreements, Plaintiffs' Trustees have been authorized to collect and distribute the contributions due under the Bargaining Agreement. The Bargaining Agreements incorporate the terms of the governing documents of ERISA Plaintiffs (the "Trust Agreements"). *Id.* ¶ 41. These agreements require Defendants to regularly pay contributions to Plaintiffs' Trust Funds based on the hours worked by Plaintiffs' employees. ¶ 42. Under the terms of these agreements, contributions are due on the fifteenth day of the month following the month hours were worked, and are considered delinquent if not received by the last day of that month. *Id.* ¶ 43.

The Bargaining and Trust Agreements require Defendants to pay liquidated damages and interest assessed on delinquent contributions. *Id.* ¶ 44. Defendants are required to pay liquidated damages of ten percent (10%) for each delinquent contribution, or twenty percent (20%) for each

delinquent contribution that is the subject of litigation. *Id.* ¶ 45. *See also* First Williams Decl. ¶ 17 ((citing Ex. A (2011–2014 Master Agreement) Art. 17, § 4(c); Ex. B (2014–2017 Master Agreement) Art. 17, § 4(c); Ex. C (2017–2020 Master Agreement) Art. 17, § 4(c); Ex. E (Trust Fund Agreement) Art. III, § C(2)). These agreements also provide for the accrual of interest on delinquent contributions at rates set by the Trustees from the day contributions become delinquent until they are paid. Sep. Statement ¶ 46. Williams Decl. ¶ 18 ((citing Ex. A to Williams Decl. (2011–2014 Master Agreement) Art. 17, § 4(c); Ex. B to Williams Decl. (2014–2017 Master Agreement) Art. 17, § 4(c); Ex. C to Williams Decl. (2017–2020 Master Agreement) Art. 17, § 4(c); Ex. E to Williams Decl. (Trust Fund Agreement) Art. III, § C(3). The Trustees have determined that interest is to be assessed at five percent (5%) of the delinquent contributions, from the date an employer becomes delinquent until the contributions are paid. Sep. Statement ¶ 46; First Williams Decl. ¶ 18; Supp. Williams Decl. in Support of Mot. for Def. J. ¶ 11 & Ex. G to Supp. Williams Decl. Art. I § D, Art. III § D.

The Bargaining and Trust Agreements also provide for reimbursement of attorneys' fees and any other expenses, including costs and audit fees, incurred in connection with the collection of delinquent contributions. First Williams Decl. ¶ 19 (citing Ex. A Art.17, § 4(c); Ex. B Art. 17, § 4(c); Ex. C Art. 17, § 4(c); Ex. E Art. III, § E).

## C.    Agreement of Employers

The Agreement of Employers Regarding Bay Area Painters and Tapers Trust Funds ("Agreement of Employers"), which was signed by Kevin Herron on May 24, 2012, states:

> The undersigned employer agrees to pay the monthly contributions for each employee required by the collective bargaining agreement affecting painters then in effect to the Bay Area Painters Pension Trust Fund, the Bay Area Painters Welfare Fund, Beneficial Fund, Supplemental Holiday Fund and Joint Apprenticeship Funds, and to be bound in all respects by the collective bargaining agreement, and the Trust Agreements.
>
> From the day an employee earns his right to contributions to these trust funds, to the that day said contributions are actually received by the designated depositary the employer agrees to hold said sums as trustee and in trust for the benefit of the employees earning said contributions. The employer further agrees that said sums are retained by the employer for said time period for administrative convenience and for the purpose of securing a faithful performance

by the employees and their union representative of a contract of employment.

**The individual whose signature appears below on behalf of the employer, agrees to be personally and individually liable for said contributions.**

Williams Decl. ¶ 11, ECF No. 74 & Ex. D to Williams Decl., ECF No. 74-4 (Agreement of Employers) (emphasis added).  Directly below this language, the form has lines for "Name of Employer," "Name of person signing on behalf of employer," and "Signature."  Agreement of Employers.  "Herron Painting Co." is handwritten on the line for "Name of Employer" and "Kevin Herron" is handwritten on the line designated "Name of person signing on behalf of employer."  The next line contains Kevin Herron's signature.  *Id.*

**D.     Herron Painting's Failure to Comply with Reporting and Contribution Requirements**

Plaintiffs allege that Defendants have failed and refused to report and pay fringe benefit contributions for hours worked by their employees for the months October 2021 through December 2022.  Am. Compl. ¶ 21, ECF No. 9.  Through June 2020, Herron Painting Co. (a California partnership) and Herron Painting, Inc. had consistently reported anywhere from 1 to 7 employees per month.  Sep. Statement ¶ 50.  Then, from July 2020 through September 2021, these Defendants reported zero hours worked by their employees.  *Id.*  Defendants have not submitted any contribution reports for the months of October 2021 through February 2025.  *Id.* ¶ 51; Christophersen Decl. ¶ 4.  Plaintiffs assert that there are a total of 41 months for which contributions reports have not been submitted.  Sep. Statement ¶ 51; Jhans Decl. ¶ 29.

**E.     Requests for Admission**

Federal Rule of Civil Procedure 36 allows a party to serve on any other party "a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of [discovery] relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  Fed. R. Civ. P. 36(a).  If the party to whom the request is directed fails to respond within thirty days after being served, the matter is deemed admitted and thus "conclusively established unless the court, on motion, permits the admission[s] to be withdrawn or amended."  Fed. R. Civ. P. 36(a)(3), 36(b).  On April 16, 2024, Plaintiffs issued Requests for Admissions ("RFAs") to each of the Defendants.  Sep. Statement ¶ 15; Jhans

Decl. ¶¶ 19, 22–25, ECF No. 75 & Exs. G, H, I, J to Jhans Decl., ECF Nos. 75-7, 75-8, 75-9, 75-10.  None of the Defendants responded to Plaintiffs' RFAs, and the deadline for response has expired.  Jhans Decl. ¶¶ 22–25.  Nor have any of the Defendants moved to withdraw or amend any of their admissions.  *Id.* ¶ 27.  Thus, each of Plaintiffs' RFAs is deemed admitted and thus conclusively established for the purposes of this action.

### III.   LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the task of the Court "'to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with reasonable particularity the evidence that precludes summary judgment."  *Id.*; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.") (citations omitted).  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")

(citations omitted).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

## IV.    DISCUSSION

**A.    Jurisdiction**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As such, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that district courts are "obligated to consider sua sponte whether [they] have subject matter jurisdiction").  There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.  A cause of action "arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989).  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state." *Id.*

Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms).  The Court also has subject

matter jurisdiction pursuant to 29 U.S.C. §§ 185(a), (c) (providing district courts jurisdiction to hear suits to enforce terms of collective bargaining agreements).

**B.    Personal Liability**

**1.    Personal Liability as to Kevin and Dora Herron for Obligations of Defendant Herron Painting Co. (a California Partnership)**

Plaintiffs argue Defendants Kevin Herron and Dora Herron are personally liable for all amounts due as partners of Herron Painting Co. (a California partnership). Mot. at 14. Under California law, all partners in a partnership are jointly and severally liable for the obligations of the partnership. Cal. Corp. Code § 16306(a). *See also Samuels v. Lido Dao*, 757 F. Supp. 3d 951, 966 (N.D. Cal. 2024), *motion to certify appeal denied*, No. 23-cv-06492-VC, 2025 WL 371797 (N.D. Cal. Feb. 3, 2025). However, a partner in a registered limited liability partnership is not liable for the obligations of the partnership that were incurred, created or assumed by the partnership while the partnership was a registered limited liability partnership. Cal. Corp. Code § 16306(c). Nor is a person admitted as a partner into an existing partnership personally liable for obligations the partnership incurred before the person was admitted as a partner. *Id.* § 16306(b).

In the Court's order on Plaintiffs' motion for default judgment against Entity Defendants, the Court granted Plaintiffs' motion for default judgment against both Entity Defendants, Herron Painting Co. (a California Partnership) and Herron Painting, Inc. Order on Mot. for Def. J., ECF No. 92. In that order, the Court awarded Plaintiffs damages in the form of unpaid contributions, liquidated damages and interest, as well as attorneys' fees and costs. *Id.* at 18, 26–27.

It is undisputed that Kevin and Dora Herron are partners of Herron Painting Co. (a California Partnership). *See* Defs.' Answer to Am. Compl. ¶¶ 4, 16, ECF No. 22; Ex. J to Jhans Decl. (RFAs to Dora Herron), RFA No. 1, ECF No. 75-10. There is no evidence in the record to indicate that Herron Painting Co. (a California Partnership) is a limited liability partnership, such that its partners would not be liable for the partnership's obligations. *See* Cal. Corp. Code § 16306(c). Nor is there any evidence that Kevin Herron or Dora Herron was admitted as a partner in Herron Painting Co. after it incurred any liabilities in this action. Thus, under California law, both Kevin and Dora Herron are jointly and severally liable for all obligations of Herron Painting

8

Co. (a California Partnership).  Because Herron Painting Co. (a California Partnership) is liable for all amounts awarded to Plaintiffs, Kevin and Dora Herron are likewise jointly and severally liable for all amounts due in this action.

Accordingly, the Court finds Kevin and Dora Herron are jointly and severally liable for all amounts due.

### 2. Personal Liability as to Kevin Herron Based on Agreement of Employers

Plaintiffs argue that Kevin Herron is personally liable for all contributions under the Agreement of Employers.  Mot. at 14.  As discussed above, the Court finds that Kevin Herron is personally liable for all amounts due as a partner of Defendant Herring Painting Co. (a California Partnership).  Accordingly, the Court need not consider Plaintiffs' arguments regarding Kevin Herron's personal liability based on the Agreement of Employers.

### 3. Personal Liability as to Kevin Heron Based on Successorship or Alter Ego

Plaintiffs argue that Kevin Herron's sole proprietorship, Herron Painting Co. (a sole proprietorship) is a successor to and/or alter ego of Defendant Herron Painting, Inc. (a Franchise Tax Board suspended California Corporation).  As discussed above, the Court finds that Kevin Herron is personally liable for all amounts due as a partner of Herron Painting Co. (a California Partnership).  Accordingly, the Court need not consider Plaintiffs' arguments regarding successorship or alter ego liability.

### C. Anticipated Defenses

Plaintiffs argue that Defendants may not rely on extrinsic evidence or use contract defenses to Plaintiffs' claims.  Because Defendants did not file an opposition to Plaintiffs' motion, the Court need not consider these arguments.

### D. Whether Plaintiffs are Entitled to Summary Judgment on the Amounts they Seek in Unpaid Contribution and Related Amounts

The Court finds that Individual Defendants are liable to Plaintiffs for Defendants' failure to comply with the Bargaining and Trust Agreements.  Defendants have not filed an opposition to Plaintiffs' motion, and have thus not challenged the amounts Plaintiffs seek in unpaid contributions, liquidated damages, interest, or attorneys' fees and costs.  "Nonetheless, the burden

9

1  remains on Plaintiffs to show that the uncontroverted evidence they have offered is legally

2  sufficient to support the amounts they seek, as a matter of law." *District Council 16 N. California*

3  *Health & Welfare Tr. Fund v. Hulsey Contracting Inc.*, No. 20-cv-02863-JCS, 2023 WL 7563873,

4  at *20 (N.D. Cal. Nov. 13, 2023) (evaluating uncontroverted evidence of damages in determining

5  amounts due on motion for summary judgment in ERISA action for unpaid and late-paid

6  contributions.).

7      Plaintiffs argue that they are entitled to recover $316,433.41, including $292,927.83 in

8  unpaid contributions, liquidated damages and interest, and $2,760.58 in attorneys' fees and costs,

9  as detailed below:

10

| Amounts Sought | | | | |
|---|---|---|---|---|
| **Work Month** | **Estimated Unpaid Contributions[2]** | **Liquidated Damages (20%)** | **5% interest (calculated through 4/2/25)** | **Subtotal** |
| Oct. 2021 | $5,567.16 | $1,113.43 | $926.44 | $7,607.03 |
| Nov. 2021 | $5,567.16 | $1,113.43 | $902.88 | $7,583.47 |
| Dec. 2021 | $5,567.16 | $1,113.43 | $879.32 | $7,559.91 |
| Jan. 2022 | $5,567.16 | $1,113.43 | $858.04 | $7,538.63 |
| Feb. 2022 | $5,567.16 | $1,113.43 | $834.48 | $7,515.07 |
| Mar. 2022 | $5,567.16 | $1,113.43 | $811.68 | $7,492.27 |
| Apr. 2022 | $5,567.16 | $1,113.43 | $788.12 | $7,468.71 |
| May 2022 | $5,567.16 | $1,113.43 | $765.32 | $7,445.91 |
| Jun. 2022 | $5,567.16 | $1,113.43 | $741.76 | $7,422.35 |
| Jul. 2022 | $5,567.16 | $1,113.43 | $718.20 | $7,398.79 |
| Aug. 2022 | $5,567.16 | $1,113.43 | $695.40 | $7,375.99 |
| Sep. 2022 | $5,567.16 | $1,113.43 | $671.84 | $7,352.43 |
| Oct. 2022 | $5,567.16 | $1,113.43 | $649.04 | $7,329.63 |
| Nov. 2022 | $5,567.16 | $1,113.43 | $625.48 | $7,306.07 |
| Dec. 2022 | $5,567.16 | $1,113.43 | $601.92 | $7,282.51 |
| Jan. 2023 | $5,567.16 | $1,113.43 | $580.64 | $7,261.23 |
| Feb. 2023 | $5,567.16 | $1,113.43 | $557.08 | $7,237.67 |
| Mar. 2023 | $5,567.16 | $1,113.43 | $534.28 | $7,214.87 |
| Apr. 2023 | $5,567.16 | $1,113.43 | $510.72 | $7,191.31 |
| May 2023 | $5,567.16 | $1,113.43 | $487.92 | $7,168.51 |
| Jun. 2023 | $5,567.16 | $1,113.43 | $464.36 | $7,144.95 |

United States District Court
Northern District of California

---

2  As of April 2, 2025, none of these amounts have been paid to the Trust Funds.  Jhans Decl. ¶ 82.

United States District Court
Northern District of California

| Jul. 2023 | $5,567.16 | $1,113.43 | $440.80 | $7,121.39 |
|---|---|---|---|---|
| Aug. 2023 | $5,567.16 | $1,113.43 | $418.00 | $7,098.59 |
| Sep. 2023 | $5,567.16 | $1,113.43 | $394.44 | $7,075.03 |
| Oct. 2023 | $5,567.16 | $1,113.43 | $371.64 | $7,052.23 |
| Nov. 2023 | $5,567.16 | $1,113.43 | $348.08 | $7,028.67 |
| Dec. 2023 | $5,567.16 | $1,113.43 | $324.52 | $7,005.11 |
| Jan. 2024 | $5,567.16 | $1,113.43 | $302.48 | $6,983.07 |
| Feb. 2024 | $5,567.16 | $1,113.43 | $278.92 | $6,959.51 |
| Mar. 2024 | $5,567.16 | $1,113.43 | $256.12 | $6,936.71 |
| Apr. 2024 | $5,567.16 | $1,113.43 | $232.56 | $6,913.15 |
| May 2024 | $5,567.16 | $1,113.43 | $209.76 | $6,890.35 |
| Jun. 2024 | $5,567.16 | $1,113.43 | $186.20 | $6,866.79 |
| Jul. 2024 | $5,567.16 | $1,113.43 | $162.64 | $6,843.23 |
| Aug. 2024 | $5,567.16 | $1,113.43 | $139.84 | $6,820.43 |
| Sep. 2024 | $5,567.16 | $1,113.43 | $116.28 | $6,796.87 |
| Oct. 2024 | $5,567.16 | $1,113.43 | $93.48 | $6,774.07 |
| Nov. 2024 | $5,567.16 | $1,113.43 | $69.92 | $6,750.51 |
| Dec. 2024 | $5,567.16 | $1,113.43 | $46.36 | $6,726.95 |
| Jan. 2025 | $5,567.16 | $1,113.43 | $25.08 | $6,705.67 |
| Feb. 2025 | $5,567.16 | $1,113.43 | $1.52 | $6,682.11 |
| **Subtotal** | $228,253.56 | $45,650.63 | $19,023.56 | $292,927.75 |
| **Total Estimated Unpaid Contributions, Liquidated Damages and Interest** | | | | **$292,927.75** |
| **Attorneys' Fees and Costs** | | | | |
| Attorneys' Fees | | | | $20,745.00 |
| Costs | | | | $2,760.58 |
| **Total Attorneys' Fees and Costs** | | | | **$23,505.58** |
| **GRAND TOTAL** | | | | **$316,433.33[3]** |

Jhans Decl. ¶¶ 29–71, 79–81.

### 1.    Damages

Plaintiffs argue they are entitled to unpaid contributions, liquidated damages, interest, and

attorneys' fees and costs in the amount of $316,433.41 total, including $228,253.56 in unpaid

contributions, $45,650.63 in liquidated damages, and $19,023.56 in interest on delinquent

---

[3]  In their motion and accompanying declarations, Plaintiffs state that they seek $292,927.83 in unpaid contributions, liquidated damages, and interest, and $316,433.41 overall.  Mot. at 1; Jhans Decl. par. 75 (ECF No. 70 at 17).  However, Plaintiffs' monthly estimated unpaid contributions, liquidated damages, and interest add up to $292,927.75, and accordingly to $316,433.33 in overall relief sought.

contributions.

ERISA authorizes Plaintiffs to recover unpaid contributions under 29 U.S.C. § 1132(g)(2)(A), interest under § 1132(g)(2)(B), and the greater of interest or liquidated damages under § 1132(g)(2)(C). An award of liquidated damages under 29 U.S.C. § 1132(g)(2)(C) "is mandatory and not discretionary." *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984). For a mandatory award of liquidated damages, three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996). As addressed in the Court's order granting Plaintiffs' motion for default judgment against Entity Defendants, Plaintiffs satisfy all three requirements.

First, Defendants were delinquent in making their contribution payments and have not submitted contributions reports and paid contributions on hours worked by their employees for the months of October 2021 through February 2025. Christophersen Decl. ¶ 4, ECF No. 73; Jhans Decl. ¶ 29. Plaintiffs have provided a breakdown of all unpaid contributions. Jhans Decl. ¶¶ 30–71. The Parties' agreements authorize the Board of Trustees to formulate and implement rules regarding the collection of employer contributions, including the methods by which Plaintiffs may estimate unreported amounts due. *Id.* ¶ 28; First Williams Decl. ¶ 21; Supp. Williams Decl. ¶ 2.

Second, the Court has granted default judgment against both Herron Painting Co. (a California partnership) and Herron Painting, Inc., and, as discussed above, finds that Individual Defendants are liable for all obligations of Herron Painting Co. (a California partnership). Pursuant to the terms of the Bargaining and Trust Agreements, Defendants are liable for liquidated damages of 20% for each delinquent contribution that is the subject of litigation and 5% interest per annum on unpaid and late-paid contributions from the date that they were delinquent until present, as well as attorneys' fees and costs. First Williams Decl. ¶¶ 17–19.

Accordingly, the Court finds Plaintiffs have met their burden of showing entitlement to liquidated damages and recommends the Court award unpaid contributions, liquidated damages, and interest in the amount of $292,927.75.

United States District Court
Northern District of California

### 2. Attorneys' Fees

Plaintiffs seek $20,745.00 in attorneys' fees for hours worked by Plaintiffs' counsel from March 25, 2022 through February 28, 2025. Jhans Decl. ¶¶ 74–79. Plaintiffs also seek reimbursement of costs in the amount of $2,760.58. *Id.* ¶ 80.

ERISA requires the Court to award "reasonable attorney's fees and costs of the action" when a plaintiff obtains a judgment in their favor or otherwise obtains the relief sought. 29 U.S.C. § 1132(g)(2)(D); *Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 253, 258 (9th Cir. 1996). Similarly, the Bargaining and Trust Agreements provide that Entity Defendants must reimburse Plaintiffs for attorneys' fees and any other expenses, including costs and audit fees, incurred in connection with the collection of delinquent contributions. First Williams Decl. ¶ 19. Pursuant to Civil Local Rule 54-5(b)(2)-(3), Plaintiffs' counsel submitted the Declaration of Siddharth Jhans, which summarizes the background and experience of the attorneys and paralegals who performed work on this matter and their hourly rates. Jhans Decl. ¶ 73. Plaintiffs also provided detailed billing records. *Id.* ¶¶ 74–79 & Exs. L, M.

Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable fee is determined by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar amount may also be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

#### a. Reasonableness of Hourly Billing Rate

To determine the appropriate lodestar amount, the Court must first assess the reasonableness of counsel's claimed hourly billing rate. *Credit Managers Ass'n of S. California v. Kennesaw Life & Acc. Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994). Courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.* The applicant

1    bears the burden to produce sufficient evidence that the rates claimed for its attorneys are in line

2    with prevailing market rates. *Fischer*, 214 F.3d at 1121 (citing *Hensley*, 461 U.S. at 433).

3    "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

4    community, and rate determinations in other cases, particularly those setting a rate for the

5    plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*

6    *of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Put differently, the party

7    seeking fees bears the burden to prove the reasonableness of hours expended using detailed time

8    records documenting completed tasks and time expended. *Hensley*, 461 U.S. at 437; *Roberts v.*

9    *City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney

10    seeking fees to submit evidence to support the requested hourly rate.").

11        When a party seeking fees submits declarations, courts must consider those declarations

12    and cannot substitute that analysis by only considering previous fee awards. *Roberts*, 938 F.3d at

13    1024 ("The district court diverged from the applicable standard in discarding the declarations

14    entirely and considering *only* previous fee awards in determining the prevailing market rate.")

15    (emphasis in original). Indeed, the Ninth Circuit has explained that solely "[e]xamining prior fee

16    awards to [even the same attorneys] in the district [is] not an acceptable substitute for considering

17    the declarations submitted by [that attorney], and explaining why those declarations did or did not

18    establish the prevailing hourly rate in the district." *Id.* at 1025.

19        Counsel charged Plaintiffs $285-$325 per hour for a shareholder attorney, $300 per hour

20    for an associate attorney (Senior Counsel), and $165-$185 for a paralegal. Jhans Decl. ¶ 73.

21    Plaintiffs' counsel has previously been awarded similar rates for their work in similar ERISA

22    cases in this District. *See Operating Eng'rs Health & Welfare Tr. Fund for N. California v. FD*

23    *Underground, Inc.*, No. 22-cv-04772-TSH, 2024 WL 4627043, at *12 (N.D. Cal. Feb. 9, 2024),

24    *report and recommendation adopted*, No. 22-cv-04772-VC, 2024 WL 4627126 (N.D. Cal. Feb.

25    26, 2024); *Operating Engineers Health & Welfare Tr. Fund for N. California v. Brambila &*

26    *Kelley Inc.*, 2023 WL 8482750, at *13 (N.D. Cal. Nov. 9, 2023), *report and recommendation*

27    *adopted*, 2023WL 8482866 (N.D. Cal. Dec. 7, 2023). Further, an hourly rate of $650 for lead

28    counsel and $190 for senior paralegals has been found to be reasonable for Bay Area ERISA

1    specialists. *Villasenor v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, 2021 WL 242924, at

2    *9 (N.D. Cal. Jan. 25, 2021); *see also Echague v. Metro Life Ins. Co.*, 69 F. Supp. 3d 990, 996-97

3    (N.D. Cal. 2014) (finding $650 for lead counsel, $250 for associates, and $135 for paralegals was

4    reasonable for ERISA legal professionals in the Bay Area). Here, the billing rates of Plaintiffs'

5    attorneys and paralegals fall at or below comparable rates that other courts have found reasonable

6    for ERISA work in this area. Therefore, the undersigned finds the rates charged by Plaintiffs'

7    attorneys are reasonable.

**b.    Reasonableness of Hours Billed**

9    Having determined the reasonable hourly rate to be applied, the Court proceeds to

10   determine the number of hours reasonably expended on the litigation. *Fischer*, 214 F.3d at 1119.

11   The Court "may not attempt to impose its own judgment regarding the best way to operate a law

12   firm, nor to determine if different staffing decisions might have led to different fee requests."

13   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). The Ninth Circuit has

14   recently explained that "district courts have a *duty* to ensure that claims for attorneys' fees are

15   reasonable, and a district court does not discharge that duty simply by taking at face value the

16   word of the prevailing party's lawyer for the number of hours expended on the case. Rather, a

17   district court must ensure that the winning attorneys have exercised billing judgment." *Vogel v.*

18   *Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (emphasis in original; quotation

19   marks and citations omitted).

20   Plaintiffs' counsel has submitted detailed billing records. Jhans Decl. ¶ 79, Exs. L, M.

21   The billing records are itemized by timekeeper and clearly detail the amount of time spent on each

22   billed task by each timekeeper. The records do not suggest duplicative billing or an unreasonably

23   high number of hours spent on any one task.

24   However, Plaintiffs also seek relief for work which is clerical in nature. In *Missouri v.*

25   *Jenkins*, the Supreme Court observed that "purely clerical or secretarial tasks should not be billed

26   at a paralegal [or lawyer's] rate, regardless of who performs them." 491 U.S. 274, 288 n.10

27   (1989). Instead, such clerical tasks should be "subsumed in firm overhead." *Nadarajah v.*

28   *Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("filing, transcript, and document organization time was

15

clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates"); *Hernandez v. Spring Charter Inc.*, 2020 WL 1171121, at *7 (N.D. Cal. Mar. 11, 2020) ("preparing proofs of service, processing records, posting letters for mail, photocopying, three-hole punching, internal filing, calendaring, and preparing the summons and complaint for filing have been found to be purely clerical tasks"); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*, 305 F. Supp. 3d 1156, 1171 (D. Or. 2018), *appeal dismissed sub nom. League of Wilderness Defs./Blue Mountains Biodiversity Project v. United States Forest Serv.*, 2019 WL 4453723 (9th Cir. Mar. 8, 2019) ("Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents.") (citation omitted).

Thus, the Court finds counsel has submitted a reasonable number of hours billed. However, of the 31.5 paralegal hours billed by Plaintiffs' counsel, 29 timekeeping entries totaling 8.7 hours include some measure of clerical work as defined by judges in this district. Exs. L, M to Jhans Decl. In other cases, judges in this district have deducted 0.1 hour per clerical task interspersed in entries with non-clerical tasks. *See Hernandez v. Spring Charter Inc.*, 2020 WL 1171121, at *8 (N.D. Cal. Mar. 11, 2020); *Crandall v. Starbucks Corp.*, 2016 WL 2996935, at *4 (N.D. Cal. May 25, 2016). Following this rule and the data above, the Court deducts 5.2 hours of paralegal work time, amounting to a total deduction of $940.00. Accordingly, the Court awards Plaintiffs $19,805 in attorneys' fees.

The entries in question are recreated below:

| Date | Employee | Hours | Dollars | Hours After Deduction | Fee Award After Deduction | Task |
|------|----------|-------|---------|----------------------|---------------------------|------|
| 4/17/2024 | JC | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service affidavits re service of discovery request and update file regarding same.** |

| 4/18/2024 | JC | 0.1 | $18.50 | 0.0 | $0.00 | **Review compulaw/calendaring re settlement conference.** |
|---|---|---|---|---|---|---|
| 2/7/2023 | NS | 0.5 | $87.50 | 0.0 | $0.00 | **Prepare service packet; finalize and issue same via First Legal for service on Defendants;** |
| 2/16/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review scheduling order; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |
| 2/28/2023 | NS | 0.4 | $70.00 | 0.0 | $0.00 | **Communications with M. Minser re service; update proof of service packet; finalize and issue same via First Legal for routine service;** |
| 4/3/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review M. Minser's email communications re proof of services; **Finalize and file Summons Returned Executed;** |
| 4/24/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review ORDER re Request to Continue; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same**; email assigned attorney summarizing same; |
| 7/18/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review Clerk's Notice re Telephonic Pre-Settlement Conference date; **update compulaw to reflect all relevant court** |

17

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | **dates and deadlines associated with same**; email assigned attorney summarizing same; |
| 9/6/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review Min Entry ; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same**; email assigned attorney summarizing same; |
| 9/25/2023 | NS | 0.3 | $52.50 | 0.2 | $35.00 | Review Civil Minutes and Settlement Conference date ; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same;** email assigned attorney summarizing same; |
| 10/30/2023 | NS | 0.1 | $17.50 | 0.0 | $0.00 | **Review Minser's email communications re settlement conference calendar evite; communications re time frame; finalize and issue evites; forward responses re same to Minser** |
| 11/29/2023 | NS | 0.2 | $35.00 | 0.1 | $17.50 | **Run costs and fees report; update file re same;** communications with Minser re findings |
| 11/29/2023 | NS | 1.0 | $175.00 | 0.8 | $140.00 | Finalize and file Joint request to continue settlement conference; **issue word version re same to Judge's proposed order unit accordingly;** read settlement conference statement; communications re same with Minser; **combine exhibits;** |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | communications with Minser re issuance; finalize and issue same to Judge and opposing counsel |
| 12/1/2023 | NS | 0.1 | $17.50 | 0.0 | $0.00 | **Update zoom link to Trustees re settlement conference** |
| 12/19/2023 | NS | 0.3 | $52.50 | 0.1 | $17.50 | Review Clerks Notice re Continue of Settlement Conference; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |
| 1/26/2024 | NS | 0.4 | $74.00 | 0.1 | $18.50 | Review ORDER re modified schedule, including Discovery, Trial and related deadlines) ; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |
| 2/15/2024 | NS | 0.3 | $55.50 | 0.0 | $0.00 | **Review Min Entry ; update file re same; case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |

United States District Court
Northern District of California

United States District Court
Northern District of California

| 3/12/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | Review Minser's email communications; **Prepare and issue calendar invite for settlement conference to Trustees;** |
|---|---|---|---|---|---|---|
| 3/18/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | Communications with Minser re deadline; **follow up email communications with opposing counsel re deadline; calendar check in accordingly** |
| 3/19/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Additional follow up email communications with opposing counsel re deadline; calendar check in accordingly** |
| 3/18/2024 | NS | 0.5 | $92.50 | 0.0 | $0.00 | **Review scheduling order (discovery, trial dates, etc.) case management; update compulaw to reflect all relevant court dates and deadlines associated with same; email assigned attorney summarizing same;** |
| 6/10/2024 | NS | 1.0 | $185.00 | 0.8 | $148.00 | Review Certificate of Service submitted by opposing counsel; update file re same; review minute entry; update file re same; review ORDER re entry of default; update file re same; review Minser's email communications re preparation of same; review matter; prepare draft for Minser's review; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same;** |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | email assigned attorney summarizing same; |
| 6/3/2024 | NS | 0.6 | $111.00 | 0.4 | $74.00 | Review proof of service; update file re same; review order; review brief; confirm calculations; **communications with Minser re font; finalize and format same;** issue brief to opposing counsel; finalize letter and issue same to Judge; **review out of office message for opposing counsel;** communications with Minser re further handling; forward same |
| 6/4/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service; update file re same;** |
| 6/11/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service; update file re same;** |
| 6/17/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service filed by opposing counsel; update file re same** |
| 6/18/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service filed by opposing counsel; update file re same** |
| 6/28/2024 | NS | 0.1 | $18.50 | 0.0 | $0.00 | **Review proof of service filed by opposing counsel; update file re same** |
| 10/11/2024 | NS | 0.5 | $92.50 | 0.0 | $0.00 | Review for Case Management Scheduling ORDER; **case management; update compulaw to reflect all relevant court dates and deadlines associated with same; including discovery, pretrial document and trial** |

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | | | | | related deadlines; add reminders to necessary deadlines; review all for accuracy; email assigned attorney summarizing same; |
|---|---|---|---|---|---|---|
| | | | | | | |

### c.    Lodestar Calculation

Based on this analysis, the Court finds Plaintiffs' counsel's rates and hours expended are reasonable and therefore awards Plaintiffs attorneys' fees in the amount of $19,805.

### 3.    Costs

The court also will award costs if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotation marks omitted); *see* 29 U.S.C. § 1132(g)(2)(D). Here, Plaintiffs also seek costs in the amount of $2,760.58, comprised of the Complaint filing fee, service of process fees for service of the Summons and Complaint on Defendants, Legal Research of Defendants. Jhans Decl. ¶ 80 & Exs. L, N. The Court has reviewed the costs and finds them reasonable. *See* Civil L.R. 54-3(a) (award of the clerk's filing fee is allowable where, as here it is paid by the claimant); *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr.*, 460 F.3d 1253, 1256-59 (9th Cir. 2006) (approving of awards for computerized research, courier services, facsimile charges, and photocopies); *Sheet Metal Workers Local 104 Health Care Tr. v. Nichols Plumbing & Heating, Inc.*, 2016 WL 8313928, at *9 (N.D. Cal. Dec. 19, 2016) ("[C]ourts have routinely awarded costs for service, messenger services, and investigatory fees in actions brought under 29 U.S.C. § 1132(g)(2)(D).").

Therefore, the Court awards costs in the amount of $2,760.58.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for summary judgment against Defendants Kevin Herron and Dora Herron. The Court awards Plaintiffs:

(1) Principal in the amount of $228,253.56;

(2) Liquidated damages in the amount of $45,650.63;

(2) Pre-judgment interest in the amount of $19,023.56;

(4) Attorneys' fees and costs in the amount of $22,565.58, representing $19,805 in attorneys' fees and $2,760.58 in costs.

**IT IS SO ORDERED.**

Dated: May 29, 2025

THOMAS S. HIXSON
United States Magistrate Judge